1  THOMAS MYERS (SBN 120674)
2  (myers@smithmyerslaw.com)
   **SMITH & MYERS LLP**
3  355 South Grand Avenue, Suite 2450
4  Los Angeles, California 90071
   Telephone:  (213) 613-2380
5  Facsimile:   (213) 613-2395

6  William L. Messenger (Va. Bar No.47179) (*Pro Hac Vice* forthcoming)
7  Ángel J. Valencia (D.C. Bar No. 1552471) (*Pro Hac Vice* forthcoming)
   c/o NATIONAL RIGHT TO WORK LEGAL DEFENSE FOUNDATION, INC.
8  8001 Braddock Road, Suite 600
9  Springfield, Virginia 22151
   Telephone: (703) 321-8510
10

11  Attorneys for Plaintiff and the Class She Seeks to Represent

12

13                **UNITED STATES DISTRICT COURT**

14                **CENTRAL DISTRICT OF CALIFORNIA**

15

16  | AMBER WALKER, individually and as representative of the requested class, | Case No.: 8:21-cv-1280 |
17  |  | COMPLAINT – CLASS ACTION |
    |                                Plaintiffs, | |
18  | v. | Constitutional Violation Action |
19  | UNIVERSITY PROFESSIONAL AND | (42 U.S.C. § 1983), Declaratory Judgment, Injunctive Relief, |
20  | TECHNICAL EMPLOYEES, | Compensatory and Nominal Damages. |
21  | COMMUNICATIONS WORKERS OF AMERICA LOCAL 9119; MICHAEL V. | |
22  | DRAKE, in his official capacity as | |
23  | President of the University of California. | |
    |                              Defendants. | |
24

25

26

27

28

**INTRODUCTION**

In *Janus v. AFSCME, Council* 31, 138 S. Ct. 2448, 2486 (2018), the Supreme Court held it violates the First Amendment for government employers and unions to take monies for union speech from employees without their consent. California law, however, grants unions broad discretion to determine and control whether government employers take payments for union speech from employees' wages. Cal. Gov't Code § 1157.12. Here, the University of California blindly defers to Defendant University Professional and Technical Employees union over whether the University deducts payments for UPTE from its employees' wages. Putting such a self-interested party in charge of making this determination has led to its inevitable result: UPTE wrongfully denied a timely and valid demand by Plaintiff Amber Walker to stop University deductions of union dues from her wages based on a restriction that UPTE unilaterally made up.

The University deprives Walker and similarly situated employees of their liberty and property interests without due process of law by granting a self-interested and biased party, UPTE, control over whether the University takes monies for union speech from employees' wages. The University and UPTE also deprive Walker and other employees of their First Amendment rights by seizing monies for union speech from them after they resigned their union membership and validly revoked their dues deduction authorizations. Walker, on behalf of herself and a class of similarly situated employees, seeks declaratory judgments, injunctive relief, and damages for Defendants' violations of rights guaranteed by the First and Fourteenth Amendments.

1

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this case under 28 U.S.C. § 1331, because it arises under the United States Constitution, and under 28 U.S.C. § 1343, because Plaintiff seeks relief under 42 U.S.C. § 1983. This Court has the authority under 28 U.S.C. §§ 2201 and 2202 to grant declaratory relief and other relief based thereon.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the claims arise in this judicial district and Defendants operate and do business in this judicial district.

## PARTIES

3.     Plaintiff Amber Walker resides and works in Orange County, California.

4.     Defendant University Professional and Technical Employees, Communications Workers of America Local 9119 ("UPTE"), whose office is located at 2855 Telegraph Avenue, Suite 310, Berkeley, CA 94705, is an employee organization.

5.     Defendant Michael V. Drake, who is sued in his official capacity as President of the University of California system, has an office located at 1111 Franklin St., 12th Floor, Oakland, CA 94607. The University of California is a public corporation established by Article IX, section 9 of the California State Constitution that is governed by the Board of Regents of the University of California. The President of the University exercises authority delegated by the Board, which includes acting as the executive head of the University and administering the central functions of the University. Unless context dictates otherwise, the phrase "University" refers to the University of California acting by and through its President Michael V. Drake.

6.    The University of California, Irvine is part of the University and is located in Orange County, California. UPTE exclusively represents employees at the University of California, Irvine.

## FACTUAL ALLEGATIONS

7.    California law requires the University to deduct union dues or fees at the behest of UPTE. Cal. Gov't Code § 1152.

8.    California Government Code § 1157.12(b) provides that certain public employers, which includes the University, shall:

> Direct employee requests to cancel or change deductions for employee organizations to the employee organization, rather than to the public employer. The public employer shall rely on information provided by the employee organization regarding whether deductions for an employee organization were properly canceled or changed, and the employee organization shall indemnify the public employer for any claims made by the employee for deductions made in reliance on that information. Deductions may be revoked only pursuant to the terms of the employee's written authorization.

9.    As applied here, California Government Code § 1157.12(b) requires the University to "[d]irect employee requests to cancel or change deductions" to UPTE and to "rely on information provided by [UTPE] . . . regarding whether deductions for an employee organization were properly canceled or changed."

10.  The University, by and through its President, is a party to three collective bargaining agreements with UPTE: (i) an agreement that governs a unit of research professionals effective from August 8, 2019 until October 31, 2024 ("RX Contract"); (ii) an agreement that governs a unit of technical professionals effective from August 8, 2019

1   until October 31, 2024 ("TX Contract"); and, (iii) an agreement that governs a unit of
2   healthcare professionals effective from August 8, 2019 until September 30, 2024 ("HX
3
4   Contract").

5       11.  Article 28 of the RX and TX Contracts, and Article 7 of the HX Contract,
6
7   govern deductions of dues and fees for UPTE from University employees' wages and are
8   attached as Exhibit 1. The relevant sections of Article 28 of the RX and TX Contracts are
9   identical and are referred to as Article 28 of the RX/TX Contracts.

10      12.  Consistent with California Government Code § 1157.12(b)'s mandate that
11
12  public employers must "[d]irect employee requests to cancel or change deductions for
13  employee organizations to the employee organization," the University and UPTE agreed
14
15  "the University will direct employee questions or concerns, or requests to change or cancel
16  deductions, to UPTE," RX/TX Contracts Art. 28(B)(1)(g), that "[t]he University shall
17  make every effort to redirect bargaining unit employees or non-unit voluntary members to
18  UPTE regarding dues related inquiries," *id.* at Art. 28(A)(1)(d), and that "[t]he University
19
20  shall redirect bargaining unit employees or non-unit voluntary members to UPTE
21  regarding dues related inquiries," HX Contract Art. 7(A)(1)(d).

22      13.  Consistent with California Government Code § 1157.12(b)'s mandate that a
23
24  "public employer shall rely on information provided by the employee organization
25  regarding whether deductions for an employee organization were properly canceled," the
26  University and UPTE agreed "[t]he Union will certify to the University to begin
27
28  deductions or to cease deductions," RX/TX Contracts Art. 28(B)(1)(a), HX Contract Art.

7(B)(1)(a), and that "[t]he Union will solely maintain the dues deduction authorization, signed by the employee from whose salary or wages the deduction is to be made," RX/TX Contracts Art. 28(B)(1)(e), HX Contract Art. 7(B)(1)(e).

14. On information and belief, the University requires that employee requests to stop dues and fee deductions go through UPTE and grants UPTE control over whether the University deducts monies for UPTE from employees' wages.

15. UPTE has a financial self-interest in having the University deduct monies for UPTE from University employees' wages, a self-interest in impeding employees' ability to stop those deductions, and a self-interest in denying employee requests to stop dues or fee deductions.

16. At all relevant times, Walker has worked as a Laboratory Assistant at University of California Irvine. Walker is subject to UPTE's exclusive representation and to the terms of the RX Contract.

17. On March 19, 2018, Walker signed a form that purports to authorize membership in UPTE and to authorize the University to deduct monies for UPTE from her wages. *See* Exhibit 2. The form provides that employees who resign their UPTE membership will have union "service fees" deducted from their wages unless they mail a revocation letter to UPTE during a designated 30-day revocation period.

> If I resign or have resigned my union membership and the law no longer requires nonmembers to pay a fair share fee, I nevertheless agree voluntarily to contribute my fair share by paying a service fee in an amount equal to dues. I direct UC to deduct this service free from my monthly pay and to transfer that money to UPTE. I

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> understand that this voluntary service fee authorization shall renew each year on the anniversary of the date I sign below, unless I mail a signed revocation letter to UPTE's central office, postmarked between 75 days and 45 days before such annual renewal date.

18.  On information and belief, the dues deduction form(s) the University and UPTE use and enforce as dues deduction authorizations in the bargaining units covered by the RX, TX, and HX Contracts include a revocation restriction that is identical or similar to the one quoted above.

19.  On June 24, 2020, Walker sent an email to UPTE agent Juan Castillo with an attached letter providing notice to UPTE that Walker resigned her union membership and did not consent to deductions of union dues or fees from her wages. *See* Exhibit 3. Castillo subsequently told Walker in a phone conversation that, to stop union dues deductions, Walker had to mail a revocation letter to UPTE within a revocation period.

20.  In January 2021, within the revocation period stated in her dues deduction form, Walker mailed a letter to UPTE providing timely notice that she was a nonmember and did not consent to deductions of union dues or fees from her wages.

21.  Walker validly revoked her dues deduction authorization pursuant to its terms by resubmitting her resignation and revocation notice to UPTE in January 2021. Under the terms of her dues deduction form, University deductions of monies for UPTE from Walker's wages should have ceased by March 19, 2021.

22.  In an email dated March 30, 2021, UPTE informed Walker, in response to her question about when dues deductions would stop, that:

> We were not able to process your dues cancellation because the request you mailed was incomplete. You are no longer a member of the union, but deductions will continue pursuant to the attached application you signed until we receive all the necessary documentation during your next cancellation window.
>
> I've also attached the letter that I mailed you on 2/5/21 that provides all the details for what we will need to process your cancellation during your next window.

*See* Exhibit 4. UPTE's attached letter, which Walker does not recall earlier receiving, states that UPTE will not honor an employee's notice to revoke a dues deduction authorization unless that notice includes a "copy of photo identification (this could be a driver's license, state ID card, passport, employee ID badge)."

23.  The dues deduction form does not state that an employee must provide proof of photo identification to revoke the authorization. Walker and other employees who signed that form did not consent to paying service fees unless and until they submit a revocation letter that includes photo identification.

24.  On information and belief, UPTE created a photo-identification requirement for revoking dues deduction authorizations and enforces its restriction to deny timely and valid requests by University employees to stop dues deductions.

25.  UPTE wrongfully denied Walker's demand to revoke her dues deduction authorization, which was timely and valid under the terms of that authorization, based on its photo-identification requirement.

26.  Under California Government Code § 1157.12(b) and Article 28 of the RX Contract, the University was required to defer to UPTE's determination that the

University should continue to deduct monies for UPTE from Walker's wages.

27. The University and UPTE seized union service fees from Walker's wages after she resigned her union membership and validly revoked her dues deduction authorization in January 2021. On information and belief, the University and UPTE will continue to seize service fees from Walker's wages unless she provides a revocation notice that includes a copy of photo identification during another revocation period, the next period of which opens in January 2022.

28. The University and UPTE are compelling Walker to subsidize UPTE and its speech without her consent and in violation of her First Amendment rights.

29. On information and belief, the University and UPTE have seized and will seize union service fees from employees who provided or provide notice to UPTE that they resign their union membership and object to dues deductions within the revocation period prescribed in their dues deduction authorization forms when the employees' revocation notices do not include a copy of photo identification.

## CLASS ACTION ALLEGATIONS

30. Walker brings this case as a class action for herself and others similarly situated. Walker seeks the certification of a "Class" of all University employees who, at any time after August 1, 2019: (i) provide or provided notice to UPTE that they resign or their union membership; (ii) mail or mailed a revocation letter to UPTE within the revocation period prescribed in their dues deduction authorization form; and, (iii) had or has monies for UPTE deducted from their wages by the University after UPTE denied the

employees' timely demand to revoke their dues deduction authorizations. For purposes of the class definition, a revocation letter broadly includes any document in which a University employee expresses a desire to withdraw from UPTE, stop payroll deductions, or otherwise not financially support UPTE.

31. On information and belief, the Class is so numerous that joinder of Class members is impractical because, as of April 2021, around 14,000 employees were subject to RX, TX, and HX Contracts and employees can continually come within the Class definition during the course of this litigation.

32. There are questions of law and fact common to all Class members. Factually, all Class members had monies for UPTE's speech seized from their wages without their consent because UPTE refused to honor the employees' valid and timely notices to revoke their dues deduction authorizations and the University deferred to UPTE's determinations. Whether this conduct violates the Class members' rights under the First and Fourteenth Amendments are questions common to all Class members.

33. Walker's claims are typical of Class members' claims. Like Class members, Walker had monies for UPTE's speech seized from her wages without her consent because UPTE refused to honor her timely and valid notice to revoke her dues deduction authorization and the University deferred to UPTE's determination. Also like Class members, this conduct (a) deprived Walker of her liberty and property interests without due process of law in violation of the Fourteenth Amendment; and, (b) deprived Walker of her First Amendment right not to subsidize UPTE's speech.

34.  Walker can fairly and adequately represent the interests of both classes and has no conflict with other, similarly situated class members.

35.  The Class can be maintained under Federal Rule of Civil Procedure 23(b)(1)(A) because prosecution of separate actions by individual Class members would create a risk of inconsistent adjudications that would establish incompatible standards of conduct for Defendants with respect to whether (i) the University can grant UPTE control over whether the University seizes monies for UPTE's speech from employees' wages and (ii) the University and UPTE can seize payments for union speech from employees after they resign their union membership and revoke their dues deduction authorizations pursuant to their terms.

36.  The Class can be maintained under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted to deprive Walker and Class members of their constitutional rights on grounds generally applicable to all, thereby making declaratory, injunctive, and other equitable relief appropriate with regard to the class as a whole.

37.  The Class can be maintained under Federal Rule of Civil Procedure 23(b)(3) because questions of fact and law common to Class members predominate over any questions affecting only individual members. Factually, all Class members had monies for UPTE's speech seized from their wages without their consent because UPTE refused to honor the employees' valid and timely notices to revoke their dues deduction authorizations and the University deferred to UPTE's determinations. Whether this conduct violates the Class members' rights under the First and Fourteenth Amendments

are questions common to all Class members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other things, all Class members are subjected to the same or similar violations of their rights but the amount of money involved in each individual's claim would make it burdensome for class members to maintain separate actions. The amount of the monies wrongfully taken from Walker and Class members is known to the defendants.

## CAUSES OF ACTION

38.  Walker re-alleges and incorporates by reference the paragraphs set forth above in this Complaint.

39.  The University and UPTE act under color of California law when deducting and collecting union dues and fees from Walker and Class members. *See* Cal. Gov't Code § 1152. The University and UPTE also act under color of California Government Code § 1157.12 when creating and enforcing their joint policies set forth in Article 28 of RX/TX Contracts and Article 7 of the HX Contract under which the University requires that employee requests to stop dues and fee deductions go through UPTE and the University grants UPTE control over whether the University deducts monies for UPTE from employees' wages.

40.  UPTE is a state actor because it acts jointly with the University under California Government Code §§ 1152 and 1157.12 and under the RX, TX, and HX Contracts to: (i) cause the University to deduct union dues and service fees from University employees' wages and remit those monies to UPTE; (ii) require that employee

requests to stop the University from deducting union dues and fees go through UPTE; and, (iii) cause the University to grant UPTE control whether the University deducts monies for UPTE from employees' wages.

## COUNT I

### Deprivation of Liberty and Property Interests
### Without Due Process of Law

41. The Fourteenth Amendment states that "nor shall any state deprive any person of life, liberty, or property, without due process of law."

42. Walker and Class members have a liberty interest under the First Amendment right in not subsidizing UPTE's speech. Walker and Class members also have a property interest in retaining their money and earned wages.

43. The University deprives, or risks depriving, Walker and Class members of both identified liberty and property interests by seizing monies for UPTE and its speech from Walker and Class members' wages.

44. Under California Government Code § 1157.12(b) and the RX, TX, and HX Contracts, employee requests to stop the identified deprivations must go through UPTE and the University must defer to UPTE on whether to stop those deprivations.

45. UPTE has a self-interest in having the University deduct monies for UPTE from University employees' wages, a self-interest in impeding and frustrating employees' ability to stop those deductions, and a self-interest in denying employee requests to stop those deductions.

46. Acting pursuant to its self-interests, UPTE created impediments for revoking dues deduction authorizations not stated in those authorizations, such as UPTE's photo-identification requirement, and has refused to honor timely and valid employee requests to revoke their dues deduction authorizations.

47. The University, by granting a biased and self-interested party (UPTE) control over whether the University deducts monies for UPTE from employees' wages, risks wrongfully depriving employees of their liberty and property interests by seizing monies for UPTE's speech from employees who validly revoked their dues deduction authorizations under the terms of those authorizations.

48. The University, because it granted a biased and self-interested party (UPTE) control over whether the University deducts monies for UPTE from employees' wages, wrongfully deprived Walker and Class members of their liberty and property interests by seizing monies for UPTE's speech from Walker and Class members after they validly revoked their dues deduction authorizations under the terms of those authorizations.

49. The University deprives Walker and Class members of their liberty and property interests without due process of law, in violation of the Fourteenth Amendment and 42 U.S.C. § 1983, by requiring that employee requests to stop dues and fee deductions go through UPTE and by granting UPTE control whether the University deducts monies for UPTE's speech from employees' wages.

50. The University deprives Walker and Class members of their liberty and

property interests without due process of law, in violation of the Fourteenth Amendment and 42 U.S.C. § 1983, by failing to provide Walker and Class members with an impartial decision-maker for determining whether deductions of monies for UPTE's speech from their wages should continue or cease.

51. UPTE deprives Walker and Class members of their liberty and property interests without due process of law, in violation of the Fourteenth Amendment and 42 U.S.C. § 1983, by abusing its authority to control whether the University deducts monies for UPTE's speech from employees' wages and by causing the University to seize monies for UPTE's speech from Walker and Class members after they validly revoked their dues deduction authorizations under the terms of those authorizations.

52. California Government Code § 1157.12(b) is unconstitutional, on its face or as applied, because it requires certain public employers to deny due process of law to employees when deducting monies for union speech from the wages of employees who object or may object to those deductions.

## COUNT II

### Deprivation of First Amendments Rights

53. The Supreme Court in *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2486 (2018) held it violates the First Amendment for the government to deduct, and for a union to collect, any payments for union speech from employees without their consent.

54. The University deducted, and UPTE collected, payments for UPTE's speech from Walker and Class members after they resigned their union membership and validly

revoked their dues deduction authorizations under the terms of those authorizations. By and through this conduct, the University and Board compelled and compel Walker and Class members to subsidize to UPTE and its speech.

55.  The University and UPTE, by seizing payments for UPTE's speech from Walker and Class members without their consent, deprive Walker and Class members of their First Amendment rights to free speech and association, in violation of the in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

56.  Walker and Class members are suffering the irreparable harm and injury inherent in a violation of First Amendment rights, for which there is no adequate remedy at law.

## COUNT III

### California Government Code § 1157.12(b) Violates the First Amendment

57.  Government employers and unions subject to California Government Code § 1157.12 violate employees' First Amendment rights to free speech and association by seizing payments for union speech from employees who do not consent to paying for that speech.

58.  California Government Code § 1157.12(b) grants unions, such as UPTE, control over whether certain government employers, such as the University, seize payments for union speech from employees.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

59. The University gave UPTE broad discretion to control whether the University seizes payments for union speech from employees in Article 28 of the RX/TX Contracts and Article 7 of the HX Contract.

60. UPTE and other unions subject to California Government Code § 1157.12(b) have a self-interest in impeding employees' ability to stop government deductions of monies for union speech and a self-interest in denying employee requests to stop government deductions of monies for union speech.

61. Walker and Class members suffered injury as a result of the fact that California Government Code § 1157.12(b) and the RX, TX, and HX Contracts grant UPTE control over whether the University seizes payments for UPTE's speech from employees' wages under because UPTE abused that authority by causing the University to seize monies for union speech from Walker and Class members after they validly revoked their dues deduction authorizations under the terms of those authorizations.

62. The University, by giving UPTE control over whether the University seizes payments for union speech from Walker and Class members, deprives Walker and Class members of their First Amendment rights to free speech and association, in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

63. California Government Code § 1157.12(b) is unconstitutional under the First Amendment because, by granting self-interested unions control over whether government employers seize payments for union speech from employees, the statute

creates an impermissible risk that nonconsenting employees will be compelled to subsidize union speech in violation of their First Amendment rights.

## **PRAYER FOR RELIEF**

Wherefore, Walker requests that this Court:

A. Issue declaratory judgments that: (i) Defendants violate the Fourteenth Amendment and 42 U.S.C. § 1983 by requiring that employee requests to stop dues and fee deductions go through UPTE and by granting UPTE control over whether the University deduct monies for UPTE from employees' wages; (ii) Defendants violate the First Amendment and 42 U.S.C. § 1983 by seizing payments for union speech from Walker and Class members without their consent; (ii) Defendants violate the First Amendment and 42 U.S.C. § 1983 by having UPTE control whether the University seizes payments for union speech from employees; (iii) that RX/TX Contracts Articles 28(A)(1)(a), (B)(1)(e), and B(1)(g) and HX Contract Articles 7(A)(1)(d), 7(B)(1)(a), and 7(B)(1)(D) are unconstitutional under the First and Fourteenth Amendments; and, (iv) that California Government Code § 1157.12(b) is unconstitutional, on its face or as applied, under the First and Fourteenth Amendments.

B. Permanently enjoin Defendants, along with their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from: (i) requiring that employee requests to stop union dues and fee deductions go through UPTE; (ii) having UPTE control whether the University seizes payments for union speech from employees' wages; (iii) seizing payments for union speech from

Walker and Class members; and, (iv) enforcing RX/TX Contract Articles 28(A)(1)(a), (B)(1)(e), and B(1)(g) and HX Contract Articles 7(A)(1)(d), 7(B)(1)(a), and 7(B)(1)(D).

    C.   Award Walker and Class members compensatory damages, or alternatively nominal damages.

    D.   Award Plaintiff Walker and all class members their costs and reasonable attorneys' fees pursuant to the Civil Rights Attorneys' Fees Award Act of 1976, 42 U.S.C. § 1988.

    E.   Grant other and additional relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED.

Dated: July 29, 2021            SMITH & MYERS LLP

                      By  /s/ Thomas Myers
                          Thomas Myers

                      William L. Messenger
                      (*Pro Hac Vice to be filed*)
                      Ángel J. Valencia
                      (*Pro Hac Vice to be filed*)

                      Attorneys for Plaintiff Amber Walker and the Class She Seeks to Represent

# EXHIBIT 1

### ARTICLE 28
### PAYROLL DEDUCTIONS

A. **DEDUCTIONS**

    1. General Conditions

        a. UPTE has the exclusive right of dues deductions authorized under Government Code section 1152 for all employees in the RX unit.

        b. UPTE shall establish its dues amount and shall certify its amount to the University. The University shall deduct from the members retirement gross earnings the amount certified by UPTE.

        c. The University shall remit deductions to UPTE on a monthly basis.

        d. The University shall make every effort to redirect bargaining unit employees or non-unit voluntary members to UPTE regarding dues related inquiries.

    2. Dues Amount Change

        a. The Union may change the certified dues amount once in a twelve-month period without cost to UPTE. Any annual changes in the amount to be deducted for union dues shall be certified to the University, in writing, at least thirty (30) calendar days prior to the effective date of the dues amount change.

        b. All costs associated with accomplishing additional changes in the dues amount (machine, programming, etc.) shall be paid by the Union at the same rates that apply to other employee organizations described in the University Accounting Manual. The University shall provide the Union with estimated costs and an estimated time of completion and the Union shall pay the agreed-upon costs before the University makes the change.

B. **ELECTRONIC TRANSMISSION OF DEDUCTION INFORMATION**

    1. Certification and Maintenance of Deduction Information

        a. The Union will certify to the University to begin deductions or to cease deductions. For bargaining unit members, deductions shall be from in unit earnings based on retirement gross earnings.

        b. UPTE will either deliver an electronic file in Excel (*.xls) format to the University's campus appropriate office or upload files to the FTP website, in accordance with Section 2 below. The University shall provide notice of the changes to the administrative process at least thirty (30) calendar days in advance of the change

1

20

EX. 1-1

c. For employees who are paid monthly, the dues file shall be transmitted electronically no later than the 15th of each month or four (4) calendar days prior to the pay confirm date for the month, whichever occurs first. For employees who are paid bi-weekly, the dues file shall be transmitted no later than the Friday before the end of the pay period.

d. The University agrees the changes will be made in time to affect the next payroll with a pay begin date that falls on or after the date the deduction certification is received.

e. The Union will solely maintain the dues deduction authorization, signed by the employee from whose salary or wages the deduction is to be made.

f. If an employee is separated from the University or transferred out of the RX unit and is still employed by the University in an non-unit title code, or if the employee holds appointments in a RX covered title code and a non-unit title code simultaneously, the University shall not deduct dues from the non-unit earnings unless explicitly authorized by the Union to do so as a non-unit voluntary member.

g. The University will direct employee questions or concerns, or requests to change or cancel deductions, to UPTE.

2. UPTE list to be submitted in the format provided in Appendix H and shall include:

   a. Location/Business Unit Code

   b. Campus Name

   c. Bargaining Unit or unrepresented

   d. Employee Identification Number

   e. Employee Name (Last, First)

   f. Action Codes: "A" = Add; "C" = Change; "S" = Stop

   g. Deduction Codes: "D" = Dues; UD = Non-Unit Voluntary Member Dues

## C. FEES FOR PROVIDING PAYROLL DEDUCTIONS

1. The University shall charge UPTE $.07 per employee for calculation and reporting and $10.00 for each monthly union payroll deduction remittance. Such charges shall be deducted from the total check remittance.

2. For the purpose of voluntary deductions for the Union, COPE fees charged to the Union shall not exceed the actual costs incurred by the University to establish such deductions.

21
Ex. 1-2

## D. INFORMATION TO ACCOMPANY REMITTANCE

The University shall submit a monthly standard earnings (based on retirement gross where applicable) and deduction report which shall contain, by campus, an alphabetical list of all employees in the bargaining unit and non-unit voluntary members on dues deduction status. The report shall include the employee identification number, employee name, amount withheld, and earnings that are the basis for the deduction. The report shall be provided electronically via the FTP site. Any costs associated with union-requested changes in the deduction report referenced above shall be fully paid by the Union.

## E. CORRECTION OF ERRORS

1. If the University's error resulted in deductions less than the correct amount, the University shall make the additional required deductions from the effected employee(s) subsequent earnings to make up the difference between the actual and correct amounts in accordance with current payroll policy regarding additional deductions. However, additional deductions from the employee(s)'s subsequent earnings shall not exceed two times the normal dues amount in any given pay period.

2. If the error results in payment of more than the correct amount and the Union has received the funds, the Union shall reimburse the employees accordingly.

3. If the parties cannot agree on the amount of the appropriate deduction only the union may file a grievance concerning the same.

4. The University shall include a communication to the employee if deducting supplemental dues in excess of the normal contributions in accordance with E.1 above with concurrent notice to UPTE.

## F. INDEMNIFICATION

The Union specifically agrees that the University shall assume no obligation other than that specified in this article, or any financial liability, including the payment of any retroactive dues arising out of the provisions of this article. Further, the Union agrees that it will reimburse the University for any reasonable costs and indemnify and hold the University, including its agents and affiliates, harmless from any claims, actions, or proceedings by any person or entity arising from any deductions made in accordance with this article. Reasonable costs shall include all fees and costs associated with defending the claim and retaining separate and independent outside counsel, including but not limited to separate outside counsel's attorney's fees and costs.

22
Ex. 1 -3

## ARTICLE 28
## PAYROLL DEDUCTIONS

A. **DEDUCTIONS**

1. General Conditions

   a. UPTE has the exclusive right of dues deductions authorized under Government Code section 1152 for all employees in the TX unit.

   b. UPTE shall establish its dues amount and shall certify its amount to the University. The University shall deduct from the members retirement gross earnings the amount certified by UPTE.

   c. The University shall remit deductions to UPTE on a monthly basis.

   d. The University shall make every effort to redirect bargaining unit employees or non-unit voluntary members to UPTE regarding dues related inquiries.

2. Dues Amount Change

   a. The Union may change the certified dues amount once in a twelve-month period without cost to UPTE. Any annual changes in the amount to be deducted for union dues shall be certified to the University, in writing, at least thirty (30) calendar days prior to the effective date of the dues amount change.

   b. All costs associated with accomplishing additional changes in the dues amount (machine, programming, etc.) shall be paid by the Union at the same rates that apply to other employee organizations described in the University Accounting Manual. The University shall provide the Union with estimated costs and an estimated time of completion and the Union shall pay the agreed-upon costs before the University makes the change.

B. **ELECTRONIC TRANSMISSION OF DEDUCTION INFORMATION**

1. Certification and Maintenance of Deduction Information

   a. The Union will certify to the University to begin deductions or to cease deductions. For bargaining unit members, deductions shall be from in unit earnings based on retirement gross earnings.

   b. UPTE will either deliver an electronic file in Excel (*.xls) format to the University's campus appropriate office or upload files to the FTP website, in accordance with Section 2 below. The University shall provide notice of the changes to the administrative process at least thirty (30) calendar days in advance of the change.

1

23

Ex. 1-4

c. For employees who are paid monthly, the dues file shall be transmitted electronically no later than the 15th of each month or four (4) calendar days prior to the pay confirm date for the month, whichever occurs first. For employees who are paid bi-weekly, the dues file shall be transmitted no later than the Friday before the end of the pay period.

d. The University agrees the changes will be made in time to affect the next payroll with a pay begin date that falls on or after the date the deduction certification is received.

e. The Union will solely maintain the dues deduction authorization, signed by the employee from whose salary or wages the deduction is to be made.

f. If an employee is separated from the University or transferred out of the TX unit and is still employed by the University in an non-unit title code, or if the employee holds appointments in a TX covered title code and a non-unit title code simultaneously, the University shall not deduct dues from the non-unit earnings unless explicitly authorized by the Union to do so as a non-unit voluntary member.

g. The University will direct employee questions or concerns, or requests to change or cancel deductions, to UPTE.

2. UPTE list to be submitted in the format provided in Appendix H and shall include:

a. Location/Business Unit Code

b. Campus Name

c. Bargaining Unit or unrepresented

d. Employee Identification Number

e. Employee Name (Last, First)

f. Action Codes: "A" = Add; "C" = Change; "S" = Stop

g. Deduction Codes: "D" = Dues; UD = Non-Unit Voluntary Member Dues

## C. FEES FOR PROVIDING PAYROLL DEDUCTIONS

1. The University shall charge UPTE $.07 per employee for calculation and reporting and $10.00 for each monthly union payroll deduction remittance. Such charges shall be deducted from the total check remittance.

2. For the purpose of voluntary deductions for the Union, COPE fees charged to the Union shall not exceed the actual costs incurred by the University to establish such deductions.

24

Ex. 1 - 5

## D. INFORMATION TO ACCOMPANY REMITTANCE

The University shall submit a monthly standard earnings (based on retirement gross where applicable) and deduction report which shall contain, by campus, an alphabetical list of all employees in the bargaining unit and non-unit voluntary members on dues deduction status. The report shall include the employee identification number, employee name, amount withheld, and earnings that are the basis for the deduction. The report shall be provided electronically via the FTP site. Any costs associated with union-requested changes in the deduction report referenced above shall be fully paid by the Union.

## E. CORRECTION OF ERRORS

1. If the University's error resulted in deductions less than the correct amount, the University shall make the additional required deductions from the effected employee(s) subsequent earnings to make up the difference between the actual and correct amounts in accordance with current payroll policy regarding additional deductions. However, additional deductions from the employee(s)'s subsequent earnings shall not exceed two times the normal dues amount in any given pay period.

2. If the error results in payment of more than the correct amount and the Union has received the funds, the Union shall reimburse the employees accordingly.

3. If the parties cannot agree on the amount of the appropriate deduction only the union may file a grievance concerning the same.

4. The University shall include a communication to the employee if deducting supplemental dues in excess of the normal contributions in accordance with E.1 above with concurrent notice to UPTE.

## F. INDEMNIFICATION

The Union specifically agrees that the University shall assume no obligation other than that specified in this article, or any financial liability, including the payment of any retroactive dues arising out of the provisions of this article. Further, the Union agrees that it will reimburse the University for any reasonable costs and indemnify and hold the University, including its agents and affiliates, harmless from any claims, actions, or proceedings by any person or entity arising from any deductions made in accordance with this article. Reasonable costs shall include all fees and costs associated with defending the claim and retaining separate and independent outside counsel, including but not limited to separate outside counsel's attorney's fees and costs.

3

25
Ex. 1-6

### ARTICLE 7
### UNION PAYROLL DEDUCTIONS

**A.    DEDUCTIONS**

    1.    General Conditions

        a.    UPTE-CWA has the exclusive right of dues deductions authorized under Government Code section 1152 for all employees in the HX unit.

        b.    UPTE-CWA shall establish its dues amount and shall certify its amount to the University in writing The University shall deduct from the members' retirement gross earnings the amount UPTE has certified in writing.

        c.    The University shall remit deductions to UPTE on a monthly basis.

        d.    The University shall redirect bargaining unit employees or non-unit voluntary members to UPTE regarding dues related inquiries.

    2.    Dues Amount Change

        a.    UPTE may change the amounts to be deducted from unit employees' pay once per calendar year without cost to UPTE. Any annual changes in the amounts to be deducted for UPTE dues shall be certified to the University, in writing, at least forty-five (45) calendar days prior to the effective date of such change.

        b.    All costs associated with accomplishing additional changes in the dues amount or structure (machine, programming, etc.) shall be paid by the Union at the same rates that apply to other employee organizations described in the University Accounting Manual. The University shall provide the Union with estimated costs and an estimated time of completion and the Union shall pay the agreed-upon costs before the University makes the change.

**B.    ELECTRONIC TRANSMISSION OF DEDUCTION INFORMATION**

    1.    Certification and Maintenance of Deduction Information

        a.    The Union will certify to the University to begin deductions or to cease deductions. For bargaining unit members, deductions shall be from in unit earnings based on retirement gross earnings.

        b.    UPTE will either deliver an electronic file in Excel (*.xls) format to the University's campus/medical center/laboratory appropriate office or upload files to the FTP website, in accordance with Section 2 below. The University shall provide notice of the changes to the administrative process at least thirty (30) calendar days in advance of the change.

        c.    For employees who are paid monthly, the union payroll deduction file shall be transmitted electronically no later than the 15th of each month. For

employees who are paid bi-weekly, the union payroll deduction file shall be transmitted no later than the Friday before the end of the pay period. If the referenced 15th of the month or Friday before the end of the pay period falls on a holiday or weekend, the file shall be transmitted the business day prior to the holiday or weekend.

d.  The University agrees the changes will be made in time to affect the next payroll with a pay begin date that falls on or after the date the deduction certification is received.

e.  The Union will solely maintain the union payroll deduction authorization, signed by the employee from whose salary or wages the deduction is to be made.

f.  If an employee is separated from the University or transferred out of the HX unit and is still employed by the University, the University shall stop the union payroll deductions.

2.  UPTE list to be submitted in the format provided in Appendix K and shall include:

a.  Location/Business Unit Code

b.  Campus or Medical Center Name

c.  Bargaining Unit or unrepresented

d.  Employee Identification Number

e.  Employee Name (Last, First)

f.  Action Codes: "A" = Add; "C" = Change; "S" = Stop

g.  Deduction Codes: "D" = Dues; UD = Unrepresented Dues; PA = Political Action

h.  Ongoing Deduction Dollar Amount for Political Action (Must be dues paying member in bargaining unit.)

## C.  FEES FOR PROVIDING PAYROLL DEDUCTIONS

1.  The University shall charge UPTE $.07 per employee for calculation and reporting and $10.00 for each monthly union payroll deduction remittance. Such charges shall be deducted from the total check remittance. A remittance report shall be provided to UPTE reconciling the union payroll deductions and the deducted administrative service fees.

2.  For the purpose of voluntary deductions for the Union, unrepresented dues and the Political Action Fund (PAF), fees charged to the Union shall not exceed the actual costs incurred by the University to establish such deductions.

.

Ex. 1 - 8

**D. INFORMATION TO ACCOMPANY REMITTANCE MONTHLY UNION PAYROLL DEDUCTIONS AND EARNINGS REPORTS**

The University shall submit a monthly standard earnings (based on retirement gross where applicable) and deduction report which shall contain, by UC location, a list of all employees in the bargaining unit and non-unit voluntary members on dues deduction status. The report shall include the employee identification number, employee name, amount withheld, and earnings that are the basis for the deduction. The report shall be provided electronically via the FTP site. Any costs associated with union-requested changes in the deduction report referenced above shall be fully paid by the Union.

**E. CORRECTION OF ERRORS**

1.  If the University's error resulted in deductions less than the correct amount, the University shall make the additional required deductions from the affected employee(s) subsequent earnings to make up the difference between the actual and correct amounts in accordance with current payroll policy regarding additional deductions. However, additional deductions from the employee(s) subsequent earnings shall not exceed two times the normal dues amount in any given pay period.

2.  If the error results in payment of more than the correct amount and the Union has received the funds, the Union shall reimburse the employees accordingly.

3.  If the parties cannot agree on the amount of the appropriate deduction only the Union may file a grievance concerning the same.

4.  The University shall include a communication to the employee if deducting supplemental dues in excess of the normal contributions in accordance with E.1. above with concurrent notice to UPTE.

**F. INDEMNIFICATION**

The Union shall indemnify the University for any claims made by the represented members for deductions made by the University in reliance on the Union's certification or on the Union's representation as to whether deductions for the Union were properly canceled or changed. The University shall promptly provide notice to the Union of any claim, demand, suit or other action for which it is seeking indemnification.

28

Ex. 1-9

# EXHIBIT 2

# UPTE STRONG! Affirm your commitment to outstanding UC jobs.

UPTE-CWA members have won excellent raises and preserved superb benefits and pensions.
But now UC executives and anti-union politicians are seeking to erode our pay and benefits.
All current and not-yet-members of UPTE need to sign this membership affirmation to preserve
our achievements.



**Your position at UC is covered by an UPTE-CWA union contract. The contract determines your pay, benefits, and working conditions. Dues are the same for everyone and set uniformly by UPTE.**

## CAMPUS

○ Berkeley   ○ Santa Cruz   ○ San Francisco   ○ Davis   ○ Santa Barbara   ○ Merced
○ LBNL   ○ UCOP   ○ Riverside   ● Irvine   ○ Los Angeles   ○ San Diego

Amber Walker
NAME

Animal Technician
JOB TITLE

EMPLOYEE NUMBER

HOME ADDRESS

WORK PHONE          HOME PHONE

Norwalk, CA 90650
CITY/STATE/ZIP

Hewitt Hall
WORK LOCATION (BUILDING/ROOM/CAMPUS)

Juan Castillo
NAME OF PERSON WHO ASKED ME TO JOIN (if applicable)

a_____w@uci.edu
EMAIL          CELL PHONE/TEXT  ☐ *Please do not text me.*

## MEMBERSHIP APPLICATION

**Authorization:** I apply to become a member of UPTE. I enter into this agreement in return for the privileges of UPTE membership and the long-term benefit of union representation. I direct UC to deduct membership dues from my monthly pay, and to transfer that money to UPTE. I can end my membership by following instructions in my union contract (found at www.upte-cwa.org), or as otherwise allowed by law. I understand that both union members and nonmembers benefit from representation and should contribute. If I resign or have resigned my union membership and the law no longer requires nonmembers to pay a fair share fee, I nevertheless agree voluntarily to contribute my fair share by paying a service fee in an amount equal to dues. I direct UC to deduct this service fee from my monthly pay and to transfer that money to UPTE. I understand that this voluntary service fee authorization shall renew each year on the anniversary of the date I sign below, unless I mail a signed revocation letter to UPTE's central office, postmarked between 75 days and 45 days before such annual renewal date.

SIGNATURE _(Mar 19, 2018)_          DATE   Mar 19, 2018

## POLITICAL ACTION FUND (PAF) AUTHORIZATION

**Authorization:** As public employees, we require a strong voice and resources to impact the government that funds us and passes laws that affect us. We do not use union dues or fees for elections. Instead, we need contributions from members like you to protect and improve our jobs and working conditions. Any contribution you make is voluntary and will go to the Communications Workers of America-COPE Political Contributions Committee for the purpose of making contribution in federal elections to protect and advance the interests of working people, including UPTE members and their families. Your contribution is separate from your union dues and is not a condition of membership. No favor or disadvantage will result from contributing or refusing to do so, and you are free to contribute more or less than the suggested amounts. Additionally, to comply with federal law, we must use our best efforts to collect and report the name, mailing address, occupation and name of employer for individuals whose contributions exceed $200 per election cycle. Contributions or gifts to the CWA-COPE PCC are not tax deductible as charitable contributions.

**Yes,** I want to contribute the following amount to CWA's PAF: ○$10 per month ○$20 per month ○$40 per month ○$___ per month
● I don't want to contribute to PAF at this time.

SIGNATURE _(Mar 19, 2018)_          DATE   Mar 19, 2018

For university use only

| TRAN CODE | EMPLOYEE ID NO. | DATE | ELEMENT NO. | BAL CD | AMOUNT |
|---|---|---|---|---|---|
| 1    2   4 | 12   13 | 18  19 | 22 | 23   23 | 30 |
|  |  | MO   DY   YR | 6 |  |  |
| X1 |  | .  . | 6 | G | .  .  .  .  . |
| X1 |  | .  . | 6 | G | .  .  .  .  . |
| X1 |  | .  . | 6 | G | .  .  .  .  . |

29

Ex. 2

# EXHIBIT 3

## Bill Messenger

| | |
|---|---|
| **From:** | Amber Walker <amberdw@uci.edu> |
| **Sent:** | Monday, April 5, 2021 3:40 PM |
| **To:** | Rebecca Whalen |
| **Subject:** | FW: Leaving The Union |
| **Attachments:** | OptOut_AmberWalker.pdf |

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

I sent this back in June 2020 and was only told that it needed to be mailed in.

**From:** Amber Walker
**Sent:** Wednesday, June 24, 2020 1:15 PM
**To:** jcastillo@upte-cwa.org
**Subject:** Leaving The Union

Hello Juan,

I am attaching a letter for my separation with the union. I talked to another representative yesterday and she said I should be hearing from you soon about leaving the union. Would you need this letter to be mailed to you or does an emailed version suffice? I emailed a union rep about a year ago with my concerns about not receiving my first payment increase per our newly signed contract. My increase was essentially taken away because instead of comparing my salary with the pay increase, they compared my past salary. So essentially, I took a pay cut by switching departments. I emailed, called and left messages and I still haven't received a call back regarding the situation to this day. But to my surprise, it wasn't until I told HR that I wanted to part with the union did I receive a call from a union representative. In my opinion this should never happen and it seems it's just too little too late. I don't pay dues EVERY paycheck just to be ignored. Please know if there is anything I can do to help expedite the process.

Thank you,


Amber Walker, B.S., RLAT

Laboratory Technician II

Transgenic Mouse Facility (TMF)
UC Irvine
Biological Sciences III
Irvine, CA 92697

amberdw@uci.edu

1
30
Ex.3 -1

UPTE-CWA Local 9119
PO Box 4443
Berkely, CA 94704

UPTE-CWA President:

Effective immediately, I resign membership in all levels of University Professional and Technical
Employees (UPTE) an affiliate of Communication Workers of America (CWA) Local 9119.

I do not consent to any payment or withholding of dues, fees, or political contributions to the union or its
affiliates. If you believe I have given consent in the past, that consent is revoked, effective immediately.

The right to be free from forced union payments is guaranteed under the First Amendment of the Federal
Constitution as recognized by *Janus v. AFSCME*. I insist that you immediately cease deducting any and all
union dues or fees from my paycheck or account, as is my constitutional right. This notification is
permanent and continuing in nature, until I sign indicating otherwise.

Further exaction of union dues or fees against my will violates my constitutional rights. If you refuse to
process such cessation of payment, I request that you:

- provide me with a copy of any dues deduction authorization — written, electronic, or oral — the
  union has on file for me; and
- inform me, in writing, of exactly what steps I must take to effectuate my constitutional rights and
  stop the deduction of dues/fees.

I understand that UPTE-CWA has arranged to be the sole provider of workplace representation services
for all employees in my bargaining unit. I understand further that, in exchange for the privilege of acting
as the exclusive bargaining representative, UPTE-CWA must continue to represent me fairly and without
discrimination in dealings with my employer and cannot, under any circumstances, deny me any wages,
benefits, or protections provided under the collective bargaining agreement with my employer.

Please reply promptly to my request.

Amber Walker

Anaheim, California 92804

UC Irvine
Laboratory Assistant 2

Signature and Date: _____ alker June 23, 2020

31

EX. 3-2

# EXHIBIT 4

## Bill Messenger

| | |
|---|---|
| **From:** | Amber Walker <amberdw@uci.edu> |
| **Sent:** | Monday, April 5, 2021 3:33 PM |
| **To:** | Rebecca Whalen |
| **Subject:** | FW: Please Help (Last Email to the Union group) |
| **Attachments:** | Incomplete Cancellation letter to Amber Walker 2-5-21.doc; Amber Walker Membership Form.pdf |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

-----Original Message-----
From: Amber Walker
Sent: Wednesday, March 31, 2021 7:19 AM
To: Erich Wise <ewise@upte-cwa.org>; Tom Godfrey <thomasmgodfrey@gmail.com>; Jonathan Elder
<jelder2@csu.fullerton.edu>; Grant Speich <grant.speich@gmail.com>; Juan Castillo <jcastillo@upte-cwa.org>; Paul
Harris <pharris@upte-cwa.org>
Cc: amy@upte-cwa.org
Subject: Please Help

Hello All,

I'm begging someone to please help me with this situation stated below. I don't want to wait a whole year to start this
process over when I sent what was asked of me per the initial agreement. In the initial agreement it only asks for me to
send in a letter stating that I want to leave the union. It did not ask for a picture of my ID or any of the other "missing
items" . I sent this letter in JANUARY, only to get a letter back in MARCH. The letter Amy says that was sent in February
was not sent to my current address, which I don't understand how this a fault of my own because my return address was
clearly on the letter I sent in JANUARY. I just don't understand why the missing information needed of me couldn't have
been sent in a email so that I could send the information within the window. I feel like the union continually fails me,
when I have been a faithful member paying dues every check.

Please Help!

Amber

-----Original Message-----
From: amy@upte-cwa.org <amy@upte-cwa.org>
Sent: Tuesday, March 30, 2021 3:05 PM
To: Amber Walker <amberdw@uci.edu>
Subject: Fwd: Re: Fwd: Was My Request Accepted?

Hello Amber,

We were not able to process your dues cancellation because the request you mailed was incomplete. You are no longer a member of the union, but deductions will continue pursuant to the attached application you signed until we receive all the necessary documentation during your next cancellation window.

I've also attached the letter that I mailed you on 2/5/21 that provides all the details for what we will need to process your cancellation during your next window.

Thanks,

Amy

```
>>
>> -------- Original Message --------
>> Subject: Was My Request Accepted?
>> Date: 2021-03-30 09:50
>> From: Amber Walker <amberdw@uci.edu>
>> To: "amy@upte-cwa.org" <amy@upte-cwa.org>
>>
>> Hi Amy,
>>
>> I'm just wondering if my request was accepted to leave the union and
>> how long does it take for deductions to stop from my pay check? I
>> would greatly appreciate your help.
>>
>> Thank you,
>>
>> Amber Walker, B.S., RLAT
>>
>> Laboratory Technician II
>>
>> Transgenic Mouse Facility (TMF)
>> UC Irvine
>> Biological Sciences III
>> Irvine, CA 92697
>>
>> amberdw@uci.edu
```

2

33

Ex. 4-2



February 5, 2021

Amber Walker

Norwalk, CA 90650

**UNIVERSITY PROFESSIONAL AND TECHNICAL EMPLOYEES**

CWA Local 9119
AFL-CIO

■

Representing
employees at the
University of
California

■

P.O. Box 4443
Berkeley, CA 94704

PH: (510) 704-8783
FX: (510) 704-8065
info@upte-cwa.org

■

www.upte.org

Dear Amber,

UPTE-CWA received your request to cancel your membership and/or payroll deduction at our office. Your request was incomplete and cannot be processed at this time.

Included is a copy of your signed authorization form, which contains the specific terms of your agreement with UPTE-CWA, including an annual cancellation period prior to your renewal date.

Your renewal date is the anniversary of the date you signed the attached authorization form. Your authorization will automatically renew unless your cancellation is postmarked within the period specified in the terms of your agreement with UPTE-CWA.

You must include all necessary documentation to revoke your authorization in accordance with these terms by sending UPTE-CWA a letter that includes the following:

- Full Name
- Signature
- Address
- Date of Request
- Employee ID Number
- Copy of photo identification (this could be a driver's license, state ID card, passport, employee ID badge)

This information should be mailed to UPTE-CWA at: PO Box 4443, Berkeley, CA 94704.

As a member run organization, we would hope you would consider the benefits of union membership. It is together that wins us strong contracts, safe workplaces and good wages. Without strong membership, our employers will not see us as a force to be dealt with and we will lose power in the workplace and at the bargaining table.

You may contact us at 1-833-4MY-UPTE if you have questions.

Regards,

UPTE-CWA

34
EX. 4-3

# UPTE STRONG! Affirm your commitment to outstanding UC jobs.

UPTE-CWA members have won excellent raises and preserved superb benefits and pensions. But now UC executives and anti-union politicians are seeking to erode our pay and benefits. All current and not-yet-members of UPTE need to sign this membership affirmation to preserve our achievements.



CWA 9119
AFL • CIO

Your position at UC is covered by an UPTE-CWA union contract. The contract determines your pay, benefits, and working conditions. Dues are the same for everyone and set uniformly by UPTE.

## CAMPUS

◯ Berkeley ◯ Santa Cruz ◯ San Francisco ◯ Davis ◯ Santa Barbara ◯ Merced
◯ LBNL ◯ UCOP ◯ Riverside ◉ Irvine ◯ Los Angeles ◯ San Diego

Amber Walker
NAME

Animal Technician
JOB TITLE

EMPLOYEE NUMBER

HOME ADDRESS

WORK PHONE                  HOME PHONE

Norwalk, CA 90650
CITY/STATE/ZIP

Hewitt Hall
WORK LOCATION (BUILDING/ROOM/CAMPUS)

Juan Castillo
NAME OF PERSON WHO ASKED ME TO JOIN (if applicable)

a         w@uci.edu
EMAIL         CELL PHONE/TEXT  ☐ Please do not text me.

## MEMBERSHIP APPLICATION

**Authorization:** I apply to become a member of UPTE. I enter into this agreement in return for the privileges of UPTE membership and the long-term benefit of union representation. I direct UC to deduct membership dues from my monthly pay, and to transfer that money to UPTE. I can end my membership by following instructions in my union contract (found at www.upte-cwa.org), or as otherwise allowed by law. I understand that both union members and nonmembers benefit from representation and should contribute. If I resign or have resigned my union membership and the law no longer requires nonmembers to pay a fair share fee, I nevertheless agree voluntarily to contribute my fair share by paying a service fee in an amount equal to dues. I direct UC to deduct this service fee from my monthly pay and to transfer that money to UPTE. I understand that this voluntary service fee authorization shall renew each year on the anniversary of the date I sign below, unless I mail a signed revocation letter to UPTE's central office, postmarked between 75 days and 45 days before such annual renewal date.

[signature] (Mar 19, 2018)
SIGNATURE

Mar 19, 2018
DATE

## POLITICAL ACTION FUND (PAF) AUTHORIZATION

**Authorization:** As public employees, we require a strong voice and resources to impact the government that funds us and passes laws that affect us. We do not use union dues or fees for elections. Instead, we need contributions from members like you to protect and improve our jobs and working conditions. Any contribution you make is voluntary and will go to the Communications Workers of America-COPE Political Contributions Committee for the purpose of making contribution in federal elections to protect and advance the interests of working people, including UPTE members and their families. Your contribution is separate from your union dues and is not a condition of membership. No favor or disadvantage will result from contributing or refusing to do so, and you are free to contribute more or less than the suggested amounts. Additionally, to comply with federal law, we must use our best efforts to collect and report the name, mailing address, occupation and name of employer for individuals whose contributions exceed $200 per election cycle. Contributions or gifts to the CWA-COPE PCC are not tax deductible as charitable contributions.

**Yes,** I want to contribute the following amount to CWA's PAF: ◯$10 per month ◯$20 per month ◯$40 per month ◯$___ per month
◉ I don't want to contribute to PAF at this time.

[signature] (Mar 19, 2018)
SIGNATURE

Mar 19, 2018
DATE

For university use only

| TRAN CODE | EMPLOYEE ID NO | DATE | ELEMENT NO. | BAL CD | AMOUNT |
|---|---|---|---|---|---|
| 1   2 | 4 | 12 13   18 | 9   22 | 23 | 23   30 |
| X1 | | MO   DY   YR | 6 | G | . . . . . . |
| X1 | | . . | 6 | G | . . . . . . |
| X1 | | . . | 6 | G | . . . . . . |

35
Ex. 4 - 4